Joseph F. Kisting v. Commissioner.
Kisting v. Commissioner
Docket No. 76623.
United States Tax Court
T.C. Memo 1961-3; 1961 Tax Ct. Memo LEXIS 345; 20 T.C.M. (CCH) 14; T.C.M. (RIA) 61003; February 17, 1961
William Elden, Esq., One North LaSalle Street, Chicago, Ill., for the petitioner. Arthur N. Nasser, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies against the petitioner for the taxable years 1951 and 1953 as follows: Section 293(b)
Section 294(d)(2)
Year
Deficiency
Addition to Tax
Addition to Tax
Total
1951
$ 6,924.73
$ 3,462.37
$ 423.86
$10,810.96
1953
20,191.70
10,095.85
1,230.18
31,517.73
*346 The issues presented for decision are: (1) Whether this Court has jurisdiction of the case; (2) whether petitioner, Joseph F. Kisting, understated his net income for the taxable years 1951 and 1953; (3) whether some part of the deficiency for each of the taxable years 1951 and 1953 is due to fraud with intent to evade taxes; and (4) whether the petitioner is liable for the taxable years 1951 and 1953 for additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939 for the substantial underestimate of estimated tax. Findings of Fact The stipulated facts are incorporated herein by reference. Joseph F. Kisting, hereinafter referred to as the petitioner, and Virginia V. Kisting were husband and wife during the taxable years 1951 and 1953, residing in Dubuque, Iowa. Joint Federal income tax returns were filed with the director of internal revenue, Des Moines, Iowa. During the taxable years 1951 and 1953 petitioner was employed as purchasing agent for the Dubuque Packing Company, Dubuque, Iowa, hereinafter referred to as the Packing Company. The joint Federal income tax return for the taxable years 1951 and 1953 were prepared by a certified public accountant at *347 the request of the petitioner and were based solely upon information submitted by petitioner and Virginia to the accountant. There was no independent analysis or audit of their records of income, deductions, bank statements and cancelled checks. The deficiency notice under date June 27, 1958, was sent by registered mail to: Mr. Joseph F. Kisting, c/o Mr. William Eldon, One No. LaSalle Street, Chicago, Illinois
Attached to the deficiency notice was a statement in explanation of the deficiencies which had the following caption: Mr. Joseph F. Kisting and Mrs. Virginia V. Kisting Husband and Wife, 2537 Windsor Avenue, Dubuque, Iowa
A power of attorney existed directing that all communications be sent to Elden who was petitioner's attorney. A notice of deficiency also dated June 27, 1958, was sent by registered mail to: Mrs. Virginia V. Kisting, 2537 Windsor Avenue, Dubuque, Iowa
Attached was a duplicate copy of the statement explaining the deficiencies. Petitioner assisted Harold White in organizing White Laboratories in Cedar Rapids, Iowa. In 1951 White, operating White Laboratories as a sole proprietorship, represented and received commission payments from a number *348 of firms that were doing business with the Packing Company. The firms represented and the amounts received are enumerated in the following paragraphs. Oklahoma Rig and Supply Company, hereinafter referred to as Oklahoma Rig, issued checks to White Laboratories in the amount of $1,300 for commissions on sales made to the Packing Company. Flour City Box Mfg. Company, hereinafter referred to as Flour City, issued checks at the direction of the petitioner to White Laboratories in the aggregate amount of $4,496.46 on sales by Flour City to the Packing Company. These "commission payments" were made to White Laboratories by Flour City because the Packing Company was a desirable account which Flour City did not want to lose. Lewis Container Company, hereinafter referred to as Lewis, issued checks totaling $1,460.27 to White Laboratories for commissions on sales to Packing Company. The checks were made payable to White Laboratories at the direction of the petitioner who instructed Lewis where the checks should be sent. Checks in the amount of $550 were issued to White Laboratories by Keebler Engineering Company, hereinafter referred to as Keebler, for commissions on sales to the Packing *349 Company of packing house equipment and supplies. White Laboratories did not do business with or represent Oklahoma Rig, Flour City, Lewis or Keebler as a manufacturer's representative, or in any other capacity, and did not earn the commissions paid to it. Petitioner instructed Harold White to deposit the commission checks received by White Laboratories in its checking account. Harold White never benefited from any of the commission checks. These commission checks represented taxable income to petitioner which he failed to report on the joint Federal income tax return for the taxable year 1951. On February 6, 1951, White Laboratories purchased a bank draft payable to the petitioner in the amount of $500. This bank draft bears the endorsement of petitioner and the stamped endorsement "For Deposit in the American Trust & Savings Bank, Dubuque, Iowa to the credit of Dubuque Packing Company." On February 10, 1951, the amount of $500 was credited to the Packing Company's account payable in petitioner's name. On May 19, 1951, White Laboratories purchased a bank draft for $1,012.77 payable to the petitioner. It was credited on May 23, 1951 to the Packing Company's account payable in *350 petitioner's name. Another bank draft was purchased on May 29, 1951 in the amount of $1,000 payable to the petitioner. This $1,000 was also credited to the Packing Company's account payable in petitioner's name. These bank drafts were purchased by Harold White at the petitioner's instruction and not to discharge any indebtedness existing between the parties. In 1952, petitioner and Harold White organized White Container, Inc., Monticello, Iowa, a corporation having stock of a par value of $100 a share which was issued as follows: Shares Issued
Joseph F.
Harold
Date of Issue
Kisting
White
Others *
April 1952
73
72
0
July 1952
45
45
101 **
October 1952
32
32
250
May 1953
0
25
0
August 1953
25
0
0
September 1953
0
0
50
Petitioner and Harold White jointly borrowed the sum of $18,000 from the Monticello State Bank and invested it in White Container, Inc. in April and July 1952. White Container was *351 engaged in the business of manufacturing corrugated boxes which it sold to the Packing Company. During the taxable year 1953 payments in the amount of $5,439.45 were made to the Monticello State Bank by White Laboratories which were applied against the joint indebtedness of the petitioner and Harold White. One-half of the above amount should have been included in petitioner's gross income, together with White Laboratories' checks, dated January 4 and April 8, 1953, respectively, in the amounts of $500 and $85, which were deposited by Harold White to the petitioner's checking account upon the instruction of the petitioner. Harold White, on his income tax returns for the taxable years 1951 and 1953, claimed deductions for commissions paid to petitioner; however, not all the commissions paid to petitioner during such years were deducted by White. During the taxable years 1951 and 1953 petitioner's brother Elmer Kisting operated a brokerage business under the name of Midwest Suppliers, Dubuque, Iowa. Elmer organized the business in 1948 with the assistance of the petitioner. It was originally a partnership between petitioner and Elmer. Elmer drew up a contingent partnership agreement *352 and gave the original to the petitioner. However, by mutual agreement petitioner returned the document to Elmer in 1951. Elmer acted as a manufacturer's representative on behalf of Lewis, but the majority of sales by Lewis to the Packing Company were made upon the order of petitioner or his secretary Dorothy Arthofer. Petitioner suggested to Elmer that he make arrangements with Lewis for it to pay commission on its sales to the Packing Company through an intermediary. Elmer thereafter arranged for Lewis to pay the commissions to Paul G. Weichelt and Associates. In 1951 and 1953 Lewis issued commission checks in the amount of $10,820.58 to Paul G. Weichelt and Associates who remitted the proceeds of these checks to Midwest Suppliers. Petitioner made loans to Elmer at the time Midwest Suppliers was organized and also to acquire a farm. However, there has never been an accounting concerning these loans or other loans between the parties. These commission checks represented taxable income to the petitioner which he failed to report on the joint Federal income tax returns filed in 1951 and 1953. Another brother of the petitioner, Alvin Kisting, operated a brokerage business in *353 1953 under the name of Alan Sales Company, Dubuque, Iowa. Alvin commenced business in 1952 with the assistance of petitioner, who arranged for the payment of commissions by Flour City and Keebler. At the instruction of petitioner Flour City made payments of $5,000 and $2,000 to Alan Sales Company as commissions on sales to the Packing Company. Shortly after the payment of the $5,000 check, Alvin, at the direction and upon the instruction of petitioner, purchased two bank drafts in the amounts of $3,500 and $1,200 payable to petitioner and Weber Motor Sales, respectively. Alvin, again at the direction of petitioner, delivered the $3,500 bank draft to Joseph Kelley and mailed the $1,200 bank draft to Modern Auto Sales, as payment on the purchase of a new car by petitioner. In addition, Keebler issued checks to Alan Sales Company in the amount of $1,709.15 at the direction of petitioner as commissions on sales of packing house equipment and supplies. Alvin Kisting did not do business with or represent Flour City or Keebler as a manufacturer's representative and did not earn the commissions paid by Flour City and Keebler on sales made to the Packing Company. Although Alvin never *354 benefited from the commission checks of Flour City or Keebler or the bank drafts he purchased, he did report and pay the income tax on the amounts he received as commissions. Petitioner asked Alvin to make certain payments for him to retail stores and Harold C. Welch, the agent for Business Men's Assurance Company. These payments were made by checks drawn on the account of Alan Sales Company. Alvin had borrowed money from the petitioner but these payments were not in discharge of this indebtedness. The amounts received from Flour City and Keebler as commissions represented taxable income to the petitioner which he failed to report. In 1951, Joseph G. Kelley, president of Micro Machine Company, a company in which the petitioner was a shareholder, received a $600 check from Keebler. Neither Kelley nor Micro Machine performed any services for or sold anything to Keebler. After this commission check from Keebler payable to Micro Machine was received by Keeley he purchased a bank draft in the amount of $600 at the petitioner's instruction and turned the draft over to him. No debt existed between either Micro Machine or Kelley and petitioner. This payment was taxable income to *355 the petitioner which he failed to report. In 1950, Keebler retained Elmer Kisting as a manufacturer's representative. Prior to that time it had never been so represented. After a short time Keebler complained to the petitioner that it could not continue to pay commissions to Elmer doing business as Midwest Suppliers because the products Keebler sold to the Packing Company had a low margin of profit and the commissions were absorbing the remainder of the profit. Petitioner told Keebler that it could discontinue paying commissions to Midwest Suppliers and thereafter Keebler could drop something in the mail whenever Keebler wanted to send something. During the years 1951 and 1953 Keebler in addition to the payments to White Laboratories, Alan Sales and Micro Machine issued checks in the aggregate amount of $2,214.94 at the direction and for the benefit of the petitioner. These payments represented taxable income to the petitioner which he did not report. In 1951, Sim Slaughter who was associated with Oklahoma Rig sent a check for $100 to Kevin W. Kisting, the son of the petitioner. This check represented taxable income to the petitioner. Flour City, in 1951, was operated as *356 a partnership composed of Harry Blindman and his brother. A loan of $10,000 was made to petitioner by Flour City at his request, the petitioner signing a note for the amount. Upon issuance of the check, Flour City debited its notes receivable account and credited its cash account. The check issued bears the respective endorsements of petitioner and Dorothy M. Arthofer. On September 12, 1951, the check was deposited in petitioner's checking account at the Dubuque Bank and Trust Company, which he caused to be opened in July 1951 and maintained in the name of Dorothy M. Arthofer. Dorothy drew a check on the Dubuque Bank and Trust Company dated September 12, 1951, payable to the order of the Lewis Container Company in the amount of $10,000. This amount represented an investment by petitioner in Lewis in return for which he received a debenture note from the company. Harry Blindman requested petitioner to repay the $10,000 in the latter part of 1951 and January 1952, at which time petitioner instructed Blindman to deduct the $10,000 from the White Laboratories commission account. Payment was effected by Flour City crediting its notes receivable account and debiting the White Laboratories *357 commission expense as follows: Year
Amounts
1951
$ 799.55
1952
7,928.45
1953
1,272.00
$10,000.00
The $10,000 represented taxable income to petitioner which he failed to include in the joint Federal income tax return filed in 1953. The following amounts were deposited or credited to petitioner's checking account in 1951 and 1953 at the Dubuque Bank and Trust Company which was maintained in the name of Dorothy M. Arthofer: Year
Amounts
1951
$ 600.00
1953
3,754.28
In 1951 the amount of $1,055.49 was deposited to White Laboratories' checking account at the Merchants National Bank. The Packing Company throughout petitioner's employment, maintained a sundry accounts payable account in his name to which there were credited petitioner's salary and bonuses from the company. During the years 1951 and 1953 the following amounts were credited to this account: Year
Amounts
1951
$2,500
1953
200
In 1951 petitioner purchased a Dubuque Bank and Trust Company cashiers check in the amount of $1,312.77. Payments in the amount of $1,200 were made in 1951 to the Monticello State Bank to be applied against petitioner's personal *358 indebtedness. In 1953 deposits in the amount of $655 were made to petitioner's checking account at the Monticello State Bank. The sources of all the above payments were unidentified and unknown and the petitioner was unable to identify or recall the source or sources from which the money was obtained. These amounts represented taxable income to petitioner which he failed to report on the joint Federal income tax returns filed for the taxable years 1951 and 1953. During the years 1951 and 1953 petitioner carried life insurance policies on the life of himself, his wife Virginia, and his sons Joseph, Robert and Kevin. Midwest Suppliers Co. was designated as the beneficiary of one of these policies. Elmer Kisting never saw or had this policy in his possession. When he was told of the existence of this policy he instructed the petitioner to change the beneficiary designation. Premium payments totaling $1,440.06, the source of which was unidentified and unknown, were made in 1951 on life insurance policies carried on the life of petitioner. Of the total premium payments made during 1953 on life insurance, the source of payment of $58.04 remains unidentified and unknown. These *359 payments reduced by the amount of $342 paid by Keebler in 1951 represented taxable income to petitioner which he failed to report on the joint Federal income tax returns filed in 1951 and 1953. Petitioner in a criminal suit in the District Court for the Southern District of Iowa was convicted upon his plea of nolo contendere of violating section 145(b), Internal Revenue Code of 1939, in that he wilfully and knowingly attempted to evade and defeat the payment of the income tax due and owing by him and Virginia for the years 1952 and 1953 by filing or causing to be filed fraudulent joint Federal income tax returns. Petitioner filed false and fraudulent joint Federal income tax returns for each of the years 1951 and 1953 and some part of the deficiency for each year was due to fraud with intent to evade tax. Opinion The first issue questions the jurisdiction of this Court to hear the case. The petitioner predicates his contention of lack of jurisdiction on the proposition that the notice of deficiency sent by the respondent fails to comply with the statutory requirements which prescribe the type of notice that should be sent when a joint income tax return is filed. These requirements *360 are set out in section 6212(b)(2), Internal Revenue Code of 1954, which recites: Joint Income Tax Return. - In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, except that if the Secretary or his delegate has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by certified mail or registered mail to each spouse at his last known address. The petitioner asserts that the term joint notice means that both the husband's and wife's names must appear on the notice of deficiency and if a separate notice is sent to each spouse, the statute and Regulations require that it be a "duplicate original of the joint notice." Petitioner maintains that the respondent erred when he sent separate notices individually addressed to each spouse, as this did not comply with the statutory requirement. He argues that this is a court of limited jurisdiction as opposed to a court of general jurisdiction and to obtain proper jurisdiction there must be a strict compliance with the statute. *361 Also as a ground for lack of jurisdiction, the petitioner advances the contention that the notice was mailed to him in care of his attorney at his attorney's office which is not in accord with the statute which requires that notice must be sent by certified or registered mail to the "last known address of the taxpayer." It is true that the copy of the notice of deficiency sent to each spouse was addressed to that person individually, but the statement attached to the notice explaining the deficiency made it perfectly clear that it was a joint notice. Furthermore, if that method of addressing the notices was not precisely in accordance with the statutory requirement of a duplicate original of the joint notice, nevertheless that is not "an error or irregularity of sufficient magnitude to nullify the notice." Marjorie F. Birnie, 16 T.C. 861, 862. The petitioner's further contention that the notice of deficiency was not mailed to his last known address casts upon him the burden of proof, and he has failed to show that it was not mailed to his last known address. The Commissioner sent the notice to the petitioner in care of petitioner's attorney, which would indicate that *362 he had been advised to do that, and at the trial Elden, the attorney, stated that a power of attorney did exist which authorized that all communications be directed to him. In any event the record does not justify a finding that the notice was not directed to the petitioner's last known address by the Commissioner. See also Clement Brzezinski, 23 T.C. 192. We hold that the notice of deficiency was not defective and we think it unnecessary to decide whether by filing the petition the taxpayer waived any defects in the notice of deficiency which would have otherwise denied this Court jurisdiction. Clement Brzezinski, supra; Marjorie F. Birnie, supra; Estate of Henry W. Clark, 10 T.C. 1107 (1948) affd. on other grounds 173 F. 2d 13 (C.A. 2, 1949). Cf. Commissioner v. Stewart, 186 F. 2d 239 (C.A. 6, 1951) reversing a Memorandum Opinion of this Court; Williams v. United States, 264 F. 2d 227 (C.A. 6, 1959); United States v. Prince, 120 F. Supp. 563 (S.D.N.Y., 1954). Proceeding to the merits of the case, the burden of proof was upon the petitioner in respect to the basic deficiencies *363 to overcome the presumption of correctness that attaches to the respondent's determination. The petitioner's testimony regarding the nature of the transactions was contradicted by his own witnesses who substantiated the respondent's determination. We do not think that the petitioner's self-serving statements were sufficient to discharge his burden especially in view of the contradictory testimony of the other witnesses. The burden of proof in respect to fraud was upon the respondent and we think that the record shows by clear and convincing evidence that fraud did exist in each of the taxable years. The evidence clearly demonstrates that petitioner was the engineer of a plan whereby suppliers paid commissions on sales to the Packing Company which were in reality kickbacks to the petitioner which he failed to report on his joint Federal income tax returns for the taxable years 1951 and 1953. Petitioner generally received these payments indirectly through assorted conduits. He instructed some manufacturers to make payments to persons whom he designated as their manufacturer's representative although the recipient of the payment had not represented the supplier in any way; he discharged *364 a loan from a supplier by applying disguised kickbacks against the indebtedness; some suppliers paid personal expenses incurred by the petitioner and in at least one situation a double screen of deception was set up around the transaction by having the payments routed through an intermediary and a company controlled by his brother. United Dressed Beef Co., 23 T.C. 879 (1955); Henry Naples, 32 T.C. 1090 (1959). When we consider these camouflaged transactions in conjunction with the conviction in the criminal suit on a nolo contendere plea for one of the years in issue, we must approve the respondent's addition to tax under section 293(b), Internal Revenue Code of 1939. See Thomas J. McLaughlin, 29 B.T.A. 247 (1933). We find no evidence to refute the correctness of the respondent's determinations as to the basic deficiencies or the additions to tax under sections 293(b) and 294(d)(2), Internal Revenue Code of 1939. Decision will be entered under Rule 50. Footnotes
*. Two other persons, unrelated to petitioner and/or Harold White, purchased all of the White Container, Inc. stock as scheduled above. ↩
**. White Container, Inc. issued one share of its stock in the name of Mrs. Harold White.↩